

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| GERALD M. SHUTT,  §<br>    Plaintiff,  §<br>  §<br>vs.  §<br>  §<br>BI-LO, LLC,  §<br>    Defendant.  §<br>  § | Civil Action No. 3:20-cv-00722-MGL |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS TO EXCLUDE EXPERT TESTIMONY AND FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Gerald M. Shutt (Shutt) brought this trip-and-fall suit in the Lexington County Court of Common Pleas against Defendant BI-LO, LLC (BI-LO), which subsequently removed it to this Court. The Court has diversity jurisdiction over the matter under 28 U.S.C. §1332.

Pending before the Court are BI-LO's motions to exclude Shutt's expert testimony and for summary judgment. Having considered the motions, the responses, the replies, the record, and the applicable law, the Court will grant both of BI-LO's motions.

## II. FACTUAL AND PROCEDURAL HISTORY

"On February 12, 2018, [Shutt] was an invitee to the business premises of a BI-LO grocery store." Complaint ¶ 1. "[A]s [Shutt] approached the cooler or rack in the store where the

cucumbers were located, he felt his right foot 'catch something,' and he tripped and fell on or over the corner of a mat . . . ." (the subject mat) *Id*. ¶ 4. As a result, Shutt, "sustain[ed] injuries to his right shoulder, buttocks and hip, some of which are [allegedly] permanent in nature." *Id*. ¶ 7.

Shutt saw the subject mat for the first time after BI-LO employees helped him stand up. *See* Dep. of Shutt at 33:15-25; 34:1-6 (answering the first time he saw the subject mat: "being as I didn't see it when I was walking to and tripped on the corner of it, after they got me up . . . [I] looked down to see what [] I trip[ped] on.").

After BI-LO removed Shutt's lawsuit to this Court, it filed its motions to exclude Shutt's expert testimony and for summary judgment. Shutt thereafter filed his responses in opposition to the motions, and BI-LO then filed its replies in support.

This Court, having been fully briefed on the relevant issues, is prepared to adjudicate BI-LO's motions.

### III.     MOTION TO EXCLUDE

#### A.     *Standard of Review*

Federal Rule of Evidence 702 creates a "gatekeeping requirement" for the trial court to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Pursuant to Rule 702, a witness may be qualified as an expert to provide opinion testimony when:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The purpose of this rule is to ensure "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" is presented in the courtroom.  *Kumho*, 526 U.S. at 152.

When making determinations on the admissibility of an expert's testimony, the Court may consider the Supreme Court's following set of non-exclusive factors, commonly referred to as the *Daubert* factors:

> 1) "whether [the] theory or technique . . . can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; 3) "the known or potential rate of error" of a methodology and "the existence and maintenance of standards of controlling the technique's operation"; and 4) the general acceptance of the theory within the "relevant scientific community."

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-94 (1993).  No single factor is determinative; the "inquiry is a 'flexible one,'" providing a trial court with "broad discretion in choosing which *Daubert* factors to apply and how to consider them."  *Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019).

The Court's task is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  The relevance inquiry requires an analysis of whether the expert opinions have "a valid scientific connection to the pertinent inquiry."  *Belville*, 919 F.3d at 232.  And, to be reliable, "expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods."  *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

    **B.**    *Discussion and Analysis*

Russell Kendzior (Kendzior), whose expert testimony is the subject of BI-LO's motion to exclude, is a floor safety expert who has "been testing mats for decades."  Dep. of Kendzior at

3

73:9-10. After receiving a Bachelor of Science in mathematics, he began working in the floor traction and safety realm. Kendzior currently serves as President of Traction Experts, Inc., where he has been retained as an expert witness in more than 800 cases. Kendzior's CV at 1. Here, Shutt retained Kendzior to provide expert testimony in attempting to prove BI-LO's alleged negligence.

    *1.*    ***Whether Kendzior's expert testimony regarding industry standards should be excluded***

BI-LO argues Kendzior's expert testimony regarding industry standards should be excluded because "he has failed to identify a breach of any specific industry standard[.]" Motion to Exclude at 3. In Shutt's response, he argues "South Carolina substantive law holds that nationally recognized industry standards are highly probative of the standard of care in a negligence case[,]" and that Kendzior's education, training, and experience in the floor safety industry qualify him as an expert. Plaintiff's Response to Motion to Exclude at 1.

In Kendzior's report, he provides floor safety industry standards published by the American Society of Testing and Materials (ASTM) and the American National Standard Institute (ANSI). Pertinent to this case, the ASTM standards provides that changes in floor levels between 1/4" and 1/2" "shall be beveled with a slope no greater than 1:2 (rise: run)." Kendzior Report, Exhibit 2 at 2.

The ANSI standards state:

> **1. The American National Standard Institute (ANSI) A1264.2-201 Provision of Slip Resistance on Walking/Working Services.**
>
> Section 7. entitled "Mats and Runners" Sub-section, 7.4 Mats shall be installed so that they do not create a tripping hazard. … Sub-section 7.5 Mats and runners shall be routinely inspected and adequately maintained to identify and correct conditions such as buckling, edge curling and other defects. Damaged mats shall be promptly replaced.

4

> **2. [ANSI] National Floor Safety Institute . . . B101.6-2012.**
>
> Section 8.10 Mats not Lying Flat- "Where mats do not lie flat, the mat shall be secured to the floor so that it lies flat or removed from service. E8.10. Mats may buckle, or not lay flat while in service or traffic may catch and curl a border or end. All these constitute trip hazards.

*Id*. at 2-3 (internal quotation marks modified).

The admissibility of Kendzior's opinions regarding industry standards presents a unique question for the Court. Typically, in a federal diversity case such as this one, evidence of industry standards is subjected to the same admissibility analysis as any other proffered evidence pursuant to Federal Rule of Evidence 702. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995). The Fourth Circuit, however, has cautioned that there are instances in which the Federal Rules of Evidence may "encroach upon a [s]tate's substantive law." *Id*. Put differently, "there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed . . . to give full effect to the state's substantive policy." *Id*. (quoting *DiAntonio v. Northampton-Accomack Mem'l Hosp.*, 628 F.2d 287, 291 (4th Cir. 1980).

Under South Carolina law, "the general rule is that evidence of industry standards is relevant to establishing the standard of care in a negligence case*." Elledge v. Richland/Lexington School Dist. Five,* 573 S.E.2d 789 at 793; s*ee also id.* at 794 (noting that evidence of safety codes is "admissible as an alternative to or utilized to buttress expert testimony") (quoting *Brown v. Clark Equip. Co.*, 618 P.2d 267, 276 (1980)). Moreover*,* the South Carolina Supreme Court does not require the defendant to have adopted industry standards before the plaintiff's injury for them to be relevant in a negligence case. *See Elledge*, 573 S.E.2d at 792-793 (agreeing the trial court "was

under the mistaken belief that the defendant must have adopted these national protocols before such evidence was admissible").

South Carolina courts provide rich precedent supporting the notion that the admissibility of industry standards is intertwined with the substantive law in negligence cases such as this. Accordingly, to give "full effect" to South Carolina's substantive policy of considering industry standards within negligence cases, the Court will not exclude the actual industry standards Kendzior has provided. *Hottle*, 47 F.3d at 106, 109. But, as provided below, the Court will reject his testimony and opinion that BI-LO failed to comply with any of these industry standards.

### 2. *Whether Kendzior's opinion that the mat was buckled, rippled, curled, or otherwise elevated 1/4" should be excluded*

BI-LO contends Kendzior lacks the necessary credentials in biomechanics or human factors to provide testimony pertaining to the causation of Shutt's fall. Shutt, in response, argues Kendzior's opinion as to the cause of Shutt's fall should be considered due to Kendzior's expertise in pedestrian safety, slip, trip, and fall prevention.

In Kendzior's report, he contends the subject mat "was either buckled, rippled, curled or otherwise elevated at least 1/4" above the adjacent floors['] level (buckled) as to create a trip hazard[,]" when Shutt tripped over it. Kendzior Report at 4. According to Kendzior, "such condition would render the mat to be out of compliance with . . . industry safety standards." *Id*.

Although Kendzior asserted the subject mat was buckled when Shutt allegedly tripped over it, he contradicts this statement in answering, "I don't know[,]" when asked to describe the subject mat's condition when Shutt fell. Dep. of Kendzior at 63:8-10. Nevertheless, according to Kendzior, his opinion the subject mat was buckled is "based on the dynamics of . . . Shutt's fall, how he fell forward striking his head . . . ." Dep. of Kendzior at 65:17-20. Kendzior, however, neglects to offer any additional evidence as to how he formed this opinion. And, as BI-LO notes,

6

Kendzior lacks any relevant expertise in biomechanics to credibly determine the subject mat presented a dangerous condition "based on the dynamics" of Shutt's fall. *Id*.

Under *Daubert*, to be sufficiently reliable, inferences must be derived using scientific or other valid methods. 509 U.S. at 590. But here, Kendzior neglected to provide the Court with the method he employed to reach this determination. Instead, his assertion the subject mat was buckled is presumably based on nothing more than speculation that Shutt would not have fallen otherwise. *See* Dep. of Kendzior at 65:15-16 (stating that there is no eyewitness testimony, and the store surveillance video was not clear enough to show what exactly happened).

Although Kendzior's theory that the subject mat was buckled may be correct, "it is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Nease v. Ford Motor Company*, 848 F.3d 219, 232 (4th Cir. 2017) (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010)). Accordingly, Kendzior's testimony that the mat was buckled and caused Shutt's fall will be excluded pursuant to *Daubert*. *See* 509 U.S. at 590 (requiring expert testimony to be based upon sufficient facts or data).

### 3. *Whether Kendzior's testimony that BI-LO should have removed its rubber-backed carpet mats should be excluded*

Next, BI-LO argues Kendzior lacks sufficient evidence to reliably say the subject mat was defective. In response, Shutt relies on Kendzior's relevant experience in the floor safety industry and argues this testimony should be considered by the Court.

Kendzior opines BI-LO "should have removed their produce area rubber-backed carpet mats and replaced them with a . . . low profile self-adhering 'grippy' type mat" because "rubber-backed carpet mats are prone to movement, buckling, rippling, etc." Kendzior Report at 4.

The BI-LO where Shutt tripped and fell closed after the incident occurred, which precluded Kendzior's ability to test the subject mat. As such, Kendzior admits he lacks first-hand knowledge of the subject mat's condition when Shutt tripped on it. *See* Dep. of Kendzior at 63:10 (answering "I don't know." when asked what the mat condition was like before Mr. Shutt encountered it).

Similarly, although Kendzior was familiar with the manufacturer and type of the subject mat, he failed to provide any test results on the traction of a comparable model. *See* Dep. of Kendzior at 73:3-20 (testifying he was "familiar with Matworks' product" and was sure he had tested the traction of a Matworks mat but failed to provide the test results).

Under *Daubert*, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." 509 U.S. at 593. Here, as BI-LO notes, Kendzior neglected to provide details from any tests showing rubber-backed carpet mats deviate from the reasonable, ordinary care invitees are owed in South Carolina. *See Milligan v. Winn-Dixie Raleigh, Inc.*, 254 S.E.2d 798, 799 (S.C. 1979) (merchant owes invitee a "duty of exercising ordinary care to keep the premises in reasonably safe condition.").

Accordingly, Kendzior's testimony asserting BI-LO "should have removed their produce area rubber-backed carpet mats and replaced them with a . . . low profile self-adhering 'grippy' type of mat," as well as his other opinions as to the cause of Shutt's fall, will be excluded as being unreliable.

## IV.     SUMMARY JUDGMENT

### A.     *Standard of Review*

The party seeking summary judgment bears the initial burden of demonstrating there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted).

Once the movant has made the threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue. *Celotex Corp.,* 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

Yet, "[s]ummary judgment cannot be granted merely because the [C]ourt believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2789 (3d ed. 1998)). "The [C]ourt may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Center Property, LLC*, 988 F.3d 756. 761 (4th Cir. 2021).

"Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted). A court improperly weighs the

evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *Id*. at 659-60.

### B.      Discussion and Analysis

To establish a negligence claim against BI-LO under South Carolina law, Shutt must show evidence that BI-LO (1) owed Shutt a duty of care; (2) breached this duty by a negligent act or omission; (3) proximately causing Shutt's injuries; and (4) Shutt suffered an injury or damages. *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 237 (S.C. 2002). As the Court mentioned earlier, as an invitee under South Carolina law, BI-LO owed him a "duty of exercising ordinary care to keep the premises in reasonably safe condition." *Milligan*, 254 S.E.2d at 799.

The parties dispute the second element of *Sabb*—whether BI-LO "breached [its] duty by a negligent act or omission." 567 S.E.2d at 237. To survive the motion for summary judgment, Shutt must show either that the defendant or defendant's employees created the dangerous condition, or that the defendant had notice of it. *Cook v. Food Lion, Inc.*, 491 S.E.2d 690, 691 (S.C. Ct. App. 1997) (emphasis omitted).

BI-LO or its agents placed the subject mat in its store. Therefore, "the key question is whether [Shutt] presented sufficient evidence to create an issue of fact as to whether [the subject mat] was indeed hazardous." *Shain v. Leiserv, Inc.,* 493 S.E.2d 111, 112 (S.C. Ct. App. 1997) (alteration in original). Alternatively, Shutt must prove the subject mat became buckled or otherwise constituted a dangerous condition and that BI-LO had notice of the condition.

### 1.      Whether the mat was buckled or otherwise elevated 1/4" and created a dangerous condition

BI-LO asserts Shutt lacks any evidence that proves the subject mat was buckled and presented a dangerous condition. Shutt argues the mat was buckled and BI-LO had actual or constructive notice of the condition.

BI-LO designated Troy Amell (Amell) to testify concerning its safety policies. As the physical security specialist for Southeastern Grocers, BI-LO's parent company, Amell is "responsible for . . . the permanent matting process that's put into [BI-LO] stores." Dep. of Troy Amell at 6:6-11. According to Amell, because "[forty] percent of all of [BI-LO's] accidents are caused by water or water like substance," "[m]ats are used as a preventative measure to prevent slips, trips, and falls from occurring . . . ." *Id*. at 15:1-5.

BI-LO charges its employees with the "responsibility of making sure [the produce department is] a safe environment for the customers" *Id*. at 13:12-14, including "straighten[ing] out mats that become folded, curled, or buckled . . . [,]" *Id*. at 14:11-14. Shutt contends BI-LO's policy, which requires its employees to straighten mats if they become buckled, shows that BI-LO knows its mats tend to buckle. This argument, however, lacks any evidentiary support proving the subject mat here was buckled at the time of Shutt's fall.

Shutt contends the subject mat was either worn out and should have been replaced, or became buckled or otherwise elevated 1/4" from "various other causes such as a buggy, [or] a cart . . . ." *Id*. at 16:10-22. Nevertheless, Shutt has neglected to provide any competent evidence establishing any of these dangerous conditions actually existed. In fact, as the Court observed above, in Shutt's deposition, he admitted he failed to see the subject mat before he fell. Dep. of Shutt at 33:23-34:6 (testifying he first saw the subject mat after BI-LO employees assisted him).

Similarly, BI-LO employees, when deposed, were unaware of the subject mat's condition at the time of Shutt's fall; and surveillance footage fails to reveal the subject mat's condition. *See, e.g.,* Dep. of Michael Poole at 8:4-8 (testifying he worked in the produce department that day and was unable to recall the mat's condition); Dep. of Bernie Gratton at 6:24-7 (attesting he was on his lunch break and came in after it happened); Dep. of David Allen at 7:1-4 (confirming the video

11

footage is the only documentation that would reveal the condition of the mat); Dep. of Troy Amell at 10:21-25 (stating the video footage fails to show the actual condition of the mat).

Amell testified BI-LO took pictures of the subject mat "within . . . an hour after [Shutt] was taken care of or immediately at that time." Dep. of Troy Amell at 10:11-13. According to Amell, photographs of the subject mat portray it as "flat" on the ground over floor tiling. *Id*. at 12:20 (stating "[b]ased on the photos, the mat was flat."). And, when Shutt did see the subject mat after his fall, it was "positioned[] pretty much similar to the positioning they show . . . depicted in [the] picture . . . ." Dep. of Gerald Shutt at 36:15-17.

As such, Shutt's first argument fails to demonstrate the subject mat was either buckled or created a dangerous condition.

### 2. *Whether the grout line created a dangerous condition*

BI-LO argues Shutt has neglected to present evidence that shows placing the subject mat on the grout line presented a dangerous condition. Shutt alleges the grout line between floor tiles under the subject mat caused the floor to be unlevel, and BI-LO putting the subject mat on an unlevel surface created a dangerous condition.

In BI-LO produce assistant Michael Poole's (Poole) deposition, he admitted the floor "is not entirely flat where the grout joint is." Dep. of Michael Poole at 18:12-14. *See also* Dep. of David Allen at 22:14-16 (answering "No, sir[,]" when asked if the grout joint between the tiles was exactly level.). As BI-LO argues, however, Shutt has failed to provide evidence showing the grout line created an unlevel surface in violation of either industry standards or building codes. BI-LO's Motion for Summary Judgment at 1:2; *See also* Dep. of Michael Poole at 18:14-15 (stating that, although not entirely flat, "it's not where you can slip.")

As the Court has already noted, under South Carolina law, property owners owe business visitors—invitees—the duty of exercising reasonable and ordinary care for their safety. *Anderson v. Racetrac Petroleum Inc.*, 371 S.E.2d 530, 531 (S.C. 1988). Ordinary care is determined by whether a reasonably prudent store owner at the time and under the circumstances would have foreseen danger and what the store owner reasonably would have done to prevent the injury. 62A Am. Jur. 2d Premises Liability § 466. Merchants are not, however, required to maintain the premises in such condition that no accident could happen to a patron using them. *Denton v. Winn-Dixie Greenville, Inc.,* 439 S.E.2d at 293 (S.C. Ct. App. 1993).

Although the grout joint between the tiles is not "exactly level" with the tile, Shutt has neglected to provide evidence showing it was unreasonably dangerous for BI-LO to place the subject mat there. The ASTM standards states that changes in floor levels between 1/4" and 1/2" "shall be beveled with a slope no greater than 1:2 (rise: run)." Kendzior Report, Exhibit 2 at 2. Shutt, however, neglects to provide evidence that establishes the grout line created a change in floor level greater than 1/4", or that the grout line's slope was out of compliance with the 1:2 (rise: run) standard.

Amell testified BI-LO places mats in its stores to prevent slips, trips, and falls due to water and grease on the floor. Dep. of Troy Amell at 14:23-25. "[T]he fact that the allegedly hazardous condition serves a specific purpose . . . enhances the importance" that Shutt prove BI-LO was negligent by placing the subject mat on the grout line. *Shain,* 493 S.E.2d at 113.

Denying BI-LO's motion for summary judgment due to the existence of the grout line would mean, arguendo, each merchant in South Carolina may be acting negligently when using floor mats to cover its tiled floors. Additionally, grout lines between tile floors are "common [such

that] a person taking reasonable care for his own safety would likely expect and see while on the premises." *Denton*, 439 S.E.2d at 294.

Consequently, Shutt has failed to establish the grout line in BI-LO's tiled floors created a dangerous condition.

### 3. *Whether incident reports of other falls show that the subject mat presented a dangerous condition*

BI-LO argues Shutt lacks any evidence that establishes the subject mat, a rubber-backed carpet mat, was prone to buckling. In response, Shutt contends that, in light of the incident reports detailed below, BI-LO knew its mats had a tendency to buckle, and that BI-LO created a dangerous condition by the sole utilization of rubber-backed carpet mats in its store.

The Court has already determined Shutt failed to show the subject mat was buckled. For the sake of thoroughness, however, it will briefly discuss Shutt's presentation of the incident reports from BI-LO stores across the state where other invitees have allegedly fallen over floor mats. Shutt asserts the incident reports prove BI-LO's mats have a tendency to become tripping hazards, that BI-LO had notice of the danger these mats present, and that BI-LO should have used a low-profile self-adhering 'grippy' type mat.

Implicit in Shutt's argument, however, is a request for this Court to speculate that, because other people have tripped on other mats in other stores in prior years, the subject mat presented a dangerous condition. But, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995); *see also Barwick,* 736 F.2d at 963 ("Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another.").

The specific facts set forth here prove that invitees in other BI-LOs in prior years have fallen over mats. That, however, fails to prove that BI-LO acted negligently in those instances, nor does it prove BI-LO did so here.

Accepting Shutt's argument would require this Court to infer the mats referred to in the incident reports of other trips and falls presented dangerous conditions to invitees, so the subject mat here both presented a dangerous condition and provided BI-LO notice of such condition. This would be an example of "the building of one inference upon another," which this Court is forbidden to do. *See Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984) (affirming the lower court's award of summary judgment, holding "[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another.").

Thus, the Court is unable to conclude the incident reports of other falls in other BI-LO stores over other mats is sufficient to establish the subject mat here created a dangerous condition.

### 4.     *Whether BI-LO's alleged failure to routinely inspect the subject mat was negligent*

BI-LO argues there is no evidence its employees had notice of the allegedly dangerous condition because there is no evidence a dangerous condition existed. Shutt, however, alleges BI-LO was negligent in failing to routinely inspect its floors and to keep them in a reasonably safe condition. To support the inspection argument, Shutt relies on the fact that "there is no indication of when any BI-LO employee last inspected the produce aisle . . . on the day Shutt . . . fell" in the store. Plaintiff's Response to Motion to Exclude at 5-6.

Amell testified BI-LO associates operate under a "don't pass it, pick it up policy for hazards as they're found." Dep. of Troy Amell at 13:7-8. But, there is "no written documentation that [its associates are] required to fill [out] at any given time" concerning inspections. *Id*. at 13:9-10.

15

Nevertheless, BI-LO lacking documentation of when its employees last inspected the produce department floor fails to show its employees failed to inspect it in an adequate and timely manner.

Shutt could have sought and presented evidence on this issue. After all, the burden is on Shutt, not BI-LO, to provide evidence concerning BI-LO's alleged breach of any duty it might have had to inspect the produce floor. *See Sabb*, 567 S.E.2d at 237 ("In a negligence action, a plaintiff must show[, among other things, that] the . . . defendant breached the duty by a negligent act or omission[.]"). Yet, he neglected to do so. The mere allegation Shutt fell over an allegedly buckled mat is insufficient to establish BI-LO's inspections of its floors were negligent.

In sum, the record is without any evidence showing BI-LO created a dangerous condition here, or that a dangerous condition ever existed. "Injuries have countless causes, and not all should give rise to legal liability." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011). In this action, Shutt has neglected to establish BI-LO is liable for his misadventure.

Given that these holdings are dispositive of the questions before the Court, it need not address the parties' remaining arguments. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### V.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court (1) BI-LO's motion to exclude Shutt's expert testimony is **GRANTED** as provided herein, (2) BI-LO's motion for summary judgment is **GRANTED**, and (3) all other pending motions are **RENDERED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 26th day of August, 2021, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
