

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| GERALD M. SHUTT,  §<br>       Plaintiff,  §<br>                    §<br>vs.                §       Civil Action No. 3:20-cv-0722-MGL<br>                    §<br>BI-LO, LLC,         §<br>       Defendant.  §<br>                    §<br> | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND**

## I.  INTRODUCTION

Plaintiff Gerald M. Shutt (Shutt) brought this trip-and-fall suit in the Lexington County Court of Common Pleas against Defendant BI-LO, LLC (BI-LO), which subsequently removed it to this Court. The Court has diversity jurisdiction over the matter under 28 U.S.C. §1332.

Pending before the Court is Shutt's Fed. R. Civ. P. 59(e) motion to alter or amend the Court's Order granting BI-LO's motions to exclude Shutt's expert's testimony and for summary judgment. Having considered the motion, the response, the reply, the record, and the applicable law, the Court will deny Shutt's Rule 59 (e) motion.

## II.    FACTUAL AND PROCEDURAL HISTORY

"On February 12, 2018, [Shutt] was an invitee to the business premises of a BI-LO grocery store." Complaint ¶ 1. "[A]s [Shutt] approached the cooler or rack in the store where the cucumbers

were located, he felt his right foot 'catch something,' and he tripped and fell on or over the corner of a mat ." (the subject mat) *Id*. ¶ 4.  As a result, Shutt, "sustain[ed] injuries to his right shoulder, buttocks and hip, some of which are [allegedly] permanent in nature." *Id*. ¶ 7.

Shutt saw the subject mat for the first time after BI-LO employees helped him stand up. *See* Dep. of Shutt at 33:15-25; 34:1-6 (answering the first time he saw the subject mat: "being as I didn't see it when I was walking to and tripped on the corner of it, after they got me up . . . [I] looked down to see what [] I trip[ped] on.").

After BI-LO removed Shutt's lawsuit to this Court, it filed its motions to exclude Shutt's expert's testimony and for summary judgment, which the Court granted.  Shutt thereafter filed his Rule 59(e) motion to alter or amend the Court's Order.  BI-LO filed a response in opposition to the motion, and Shutt then filed its reply in support.

This Court, having been fully briefed on the relevant issues, is prepared to adjudicate Shutt's motion.

### III.     STANDARD OF REVIEW

"A Rule 59(e) motion is discretionary [and] . . . need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010).  It is an extraordinary remedy that should be applied sparingly.  *EEOC v. Lockheed Martin Corp*., 116 F.3d 110, 112 (4th Cir.1997).

Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that

could have been raised prior to the entry of judgment" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted)).

### IV.     DISCUSSION AND ANALYSIS

#### A.     Whether the Court misapprehended the South Carolina Court of Appeals' holding in Cook v. Food Lion, Inc., 491 S.E.2d 690 (S.C. Ct. App. 1997)

According to Shutt, the Court's statement in the Order that "Shutt must prove the subject mat became buckled or otherwise constituted a dangerous condition and that BI-LO had notice of the condition[,]" *Shutt v. BI-LO, LLC*, No. 3:20-cv-00722-MGL, 2021 WL 3811522, at *6 (D.S.C. Aug. 26, 2021), "conflicts with the South Carolina decisional law of *Cook*[,]" Motion at 2.

BI-LO counters that "[t]his case is not analogous to *Cook* because the *Cook* case had evidence of 1) the tendency of a particular mat to bunch; 2) evidence of the cause of why the mat would bunch; and 3) apparent failure to respond to the known tendency." BI-LO's Response at 3.

In *Cook*, the plaintiff had proffered the testimony of several witnesses to the trial court, which the trial court excluded. The excluded testimony concerned "the tendency or proclivity of [the defendant's] floor mats to wrinkle on occasions previous to [the plaintiff's] accident." *Cook,*, 491 S.E.2d at 691.

"First, Martha Cantrell, who was a cashier at Food Lion at the time of the accident, testified the floor mats sometimes wrinkled or crumpled when people would kick them. She did not, however, see the mats wrinkle on the day of the accident." *Id.*

"Next, Joseph Gokey, a bagger for Food Lion, testified by deposition that he had previously seen the floor mats in a wrinkled or bent position, and that the mats became twisted 'a lot.'" *Id.* "He stated, 'They tended, you know, situate around too—sometimes they would be kicked or stomped

3

on where the doors . . . would catch them and as they were closing they'd bring the mats into the doors.' He testified he had straightened the mats out 'a few times' when they became wrinkled." *Id*. "He further testified he would trip on the mats when he brought in shopping carts from outside and 'the buggies would catch up on the rug when you [came] around the corner.'" *Id*.

"Randall Horne, who was also a bagger for Food Lion at the time of the accident, testified by deposition that he had seen the mats become wrinkled, that he had straightened out the mats and had seen other Food Lion employees straighten out the mats, and that they wrinkled 'pretty often.'" *Id*. "He further testified he had seen people stumble on the mats." *Id*.

"Finally, Cook herself testified she tripped on a floor mat which had become wrinkled." *Id*.

"The trial judge directed a verdict in favor of [the defendant] on the issue of liability, holding that [the plaintiff] presented no evidence Food Lion had notice on the date of the accident that the mats had become wrinkled." *Id*.

The Court of Appeals, however, held that the defendant's "employees created the allegedly dangerous conditions by placing the mats by the exit doors. Thus, it was not necessary for [the plaintiff] to show that [the defendant's] employees had notice that the floor mats were wrinkled or bunched immediately prior to [the plaintiff's] fall. *Id*. at 691–92 (footnote omitted).

Accordingly, the Court of Appeals reversed the trial court's directed verdict decision and remanded the case for another trial. *Id*. at 694.

Shutt has latched onto the statement in *Cook* that "it was not necessary for [the plaintiff] to show that [the defendant's] employees had notice that the floor mats were wrinkled or bunched immediately prior to [the plaintiff's] fall. *Id*. at 691–92 (footnote omitted). But, he neglects to take

into account the Court of Appeals' holding that this is because the defendant's "employees created the allegedly dangerous conditions by placing the mats by the exit doors." *Id*.

Yes, BI-O's employee also placed the mat, which Shutt allegedly tripped over, on the floor. But, in *Cook,* there was specific evidence from specific witnesses about specific floor mats, the mats at the exit door, which often became wrinkled, crumpled, and twisted. Here, however, there is no such specific evidence from specific witnesses about the specific mat that is the subject of this lawsuit.

In this case, the gist of Shutt's argument appears to be that BI-LO knew that its mats could become wrinkled, crumpled, and twisted. Thus, as the argument goes, its mats were, per se, a tripping hazard; and BI-LO, by placing mats in its stores, was on notice it had created a hazardous condition. But, that is not the law.

Shutt appears to be making a res ipsa loquitur type of argument. "To invoke successfully the doctrine [of res ipsa loquitur], the plaintiff must establish that the accident was '(1) of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff.'" *District of Columbia v. Singleton*, 41 A.3d 717 (Md. 2012) (quoting *Holzhauer v. Saks & Co*., 335–36, 697 A.2d 89 (Md. 1997)). But, South Carolina does not recognize the doctrine of res ipsa loquitur. *Snow v. City of Columbia*, 409 S.E.2d 797, 803 (S.C. Ct. App. 1991).

"A merchant is not an insurer of the safety of his customers, but rather owes them the duty to exercise ordinary care to keep the premises in a reasonably safe condition." *Cook*, 491 S.E.2d at 691. "To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the [defendant] which created the dangerous condition; or (2) that the [defendant] had actual or

5

constructive knowledge of the dangerous condition and failed to remedy it." *Garvin v. BI-LO, Inc.*, 541 S.E.2d 831, 832 (S.C. 2001).

Shutt has failed to show either BI-LO or BI-LO's employees created a hazardous condition or that BI-LO had notice of it. In fact, Troy Smell (Smell), who BI-LO designated to testify concerning its safety policies, "testified BI-LO took pictures of the subject mat "within . . . an hour after [Shutt] was taken care of or immediately at that time." *Shutt*, 2021 WL 3811522, at *6 (citation omitted) (internal quotation marks omitted).

"According to Smell, photographs of the subject mat portray it as 'flat' on the ground over floor tiling. . . . [And], when Shutt [saw] the subject mat after his fall, [he testified] it was 'positioned pretty much similar to the positioning they show depicted in the picture.'" *Id*. (citation omitted) (alteration marks omitted). Of course, if the mat was flat, then it obviously was not wrinkled, crumpled, or twisted .

For these reasons, the Court is unable to agree with Shutt that it misapprehended *Cook*. As such, the Court declines to grant Shutt's Rule 59(e) motion on this basis.

### B.     *Whether the Court erred in excluding the testimony offered by Shutt's expert*

The Court excluded the opinion of Shutt's expert, Russell Kendzior (Kendzior), that the subject mat was buckled, rippled, curled, or otherwise elevated 1/4" and that BI-LO should have removed its rubber-backed carpet mats.

Shutt contends in his motion that his expert's "opinion that the rubber- backed mats used by BI-LO are prone to buckling, curling, and wrinkling, and therefore create tripping hazards based on industry standards . . . should be admitted because [Shutt] established a sufficient factual basis for his [expert's] testimony." Motion at 4. "All that must be shown[,]" according to Shutt, "is that there is a tendency for this to occur. That tendency has been established based upon the testimony of

6

BI-LO employees, the policies and procedures of BI-LO and the prior incident reports which show BI-LO was on notice of the hazards of using rubber-backed mats." *Id*.

BI-LO, however, argues that, "[i]n light of the misapplication of *Cook* . . . by [Shutt], . . . [his] basis by which to argue that [his expert's] testimony should be allowed is also lacking." BI-LO's Response at 5-6.

The Court previously gave at least two good reasons why it was excluding Kendzior's testimony. Here they are.

First, "according to Kendzior, his opinion the subject mat was buckled is based on the dynamics of. . . Shutt's fall, how he fell forward striking his head." *Shutt*, 2021 WL 3811522, at *4 (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted). "Kendzior, however, neglects to offer any additional evidence as to how he formed this opinion. And, as BI-LO notes, Kendzior lacks any relevant expertise in biomechanics to credibly determine the subject mat presented a dangerous condition based on the dynamics of Shutt's fall. *Id* (internal quotation marks omitted).

"[H]is assertion the subject mat was buckled is presumably based on nothing more than speculation that Shutt would not have fallen otherwise." *Id*. "Although Kendzior's theory that the subject mat was buckled may be correct, it is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Id*. (citation omitted) (internal quotation marks omitted).

Second, "Kendzior admits he lacks first-hand knowledge of the subject mat's condition when Shutt tripped on it." *Id*. "[A]lthough Kendzior was familiar with the manufacturer and type of the subject mat, he failed to provide any test results on the traction of a comparable model." *Id*.

"Under *Daubert*, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Id*. "Here, as BI-LO notes, Kendzior neglected to provide details from any tests showing rubber-backed carpet mats deviate from the reasonable, ordinary care invitees are owed in South Carolina." *Id*.

Accordingly, the Court is unable to agree that it would be proper to grant Shutt's Rule 59(e) motion based on the Court's decision to exclude Kendzior's testimony.

### C.     *Whether the Court erred in concluding the prior incident reports require the Court to Speculate*

In Shutt's response in opposition to BI-LO's motion for summary judgment, he submitted "incident reports from BI-LO stores across the state where other invitees have allegedly fallen over floor mats[,]" which he argues "prove BI-LO's mats have a tendency to become tripping hazards, that BI-LO had notice of the danger these mats present, and that BI-LO should have used a low-profile self-adhering 'grippy' type mat." *Id*. at *8.

The Court, however, held that "[i]Implicit in Shutt's argument . . . is a request for this Court to speculate that, because other people have tripped on other mats in other stores in prior years, the subject mat presented a dangerous condition. But, mere unsupported speculation is not enough to defeat a summary judgment motion." *Id*. (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

In Shutt's motion, he maintains that "[t]he prior incident reports of other patrons and customers establish [1] this tendency or [2] at a minimum notice of the hazards of using rubber backed mats if not frequently inspected." Motion at 5. According to Shutt, "the prior incident reports do not require the [C]ourt or a jury to speculate that there is a tendency of these floor mats

8

to curl or buckle, when the testimony of BI-LO's employees and policies and procedures are taken into consideration[.]" *Id*.

BI-LO, however, urges "[n]otice that some mat[s] in some BI-LO store[s] buckled is not evidence that this particular mat that . . . Shutt allegedly tripped over buckled." BI-LO's Response at 6.

Concerning Shutt's argument the prior incidents establish a tendency of the mats to wrinkle and creating a hazardous condition, all that the Court is able to evince from each of these documents is that someone, somewhere purportedly fell over a mat at a BI-LO. They neglect to show what type of mat the person allegedly fell over, whether the mat was wrinkled. crumpled, or twisted at the time of the fall, or whether the fall was based on BI-LO's negligence or for some other reason.

The Court next turns to Shutt's contention the prior incidents "establish, . . . at a minimum[,] notice of the hazards of using rubber backed mats if not frequently inspected[,]" Motion at 5. The Fourth Circuit has long held that, **"**[w]hen prior incidents are admitted to prove notice, the required similarity of the prior incidents to the case at hand is more relaxed than when prior incidents are admitted to prove negligence. The incidents need only be sufficiently similar to make the defendant aware of the dangerous situation." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1386 (4th Cir. 1995).

But, the Court is unpersuaded that the prior incidents Shutt presents are "sufficiently similar to make [BI-LO] aware of the dangerous situation." *Id.* Even if BI-LO had notice that some of its rugs at some of its other stores wrinkled, crumpled, or twisted, that does not amount to notice that the subject rug created a hazardous condition. Again, these prior incident reports fail to show what type of mat the person allegedly fell over, whether the mat was wrinkled. crumpled, or twisted at the time of the fall, or whether the fall was based on BI-LO's negligence or for some other reason,

perhaps even the carelessness of the one who fell. Certainly, a prior incident of one falling as a result of their own negligence is not notice that a particular rug is hazardous.

Consequently, the Court also refuses Shutt's invitation to grant his Rule 59(e) motion on this basis.

## V.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Shutt's Rule 59(e) motion to alter or amend the Court's judgment granting BI-LO's motions to exclude Shutt's expert's testimony and for summary judgment must be **DENIED**.

**IT IS SO ORDERED**.

Signed this 27th day of June, 2022, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE